**In re CLOTHES, INC., d/b/a Jays Mens Shop and Mr. D's, Debtor.**

**Phillip D. ARMSTRONG, Trustee of Estate of Clothes, Inc., d/b/a Jays Mens Shop and Mr. D's, Plaintiff,**

v.

**GENERAL GROWTH DEVELOPMENT CORP. and General Growth Management Corp., Defendants.**

**Bankruptcy No. 81–05004. Adv. No. 82–7313.**

United States Bankruptcy Court, D. North Dakota.

Nov. 3, 1983.

Phillip D. Armstrong, Minot, N.D., trustee.

Russell G. Robinson, Minot, N.D., for defendant.

## MEMORANDUM OPINION

WILLIAM A. HILL, Bankruptcy Judge.

This matter is before the Court on the Defendant's Motion for Summary Judgment filed on December 6, 1982, and brought pursuant to Rule 756 of the Rules of Bankruptcy Procedure. The Plaintiff-Trustee has cross appealed for summary judgment, conceding there to be no genuine issue of fact.

On January 25, 1980, the Debtor leased retail space from the Defendant in Dakota Square Shopping Center in Minot, North Dakota. The terms called for minimum monthly rent of $2,370.00 plus additional monthly charges for a total monthly rent payment of $3,065.40. The Debtor apparently did not occupy the premises until April 25, 1980, and was not obligated for rent until that time. The Debtor remained in possession until November 15, 1980, and an involuntary Chapter 7 petition was filed against it on January 6, 1981. There is some disagreement between the Defendant's and the Plaintiff's recollection of whether payments were received for the months of June, July, August and September. The affidavit of the Shopping Center Manager states that the Defendant was late in paying the rents for August, September, October and November implying that, while late, payments were made. In his answers to the Plaintiff's interrogatories, he states to have received two payments in May of $3,065.40 each and one payment in July of $3,065.40. The Plaintiff-Trustee, on the other hand, claims that the only payment made until October, 1980, was a single payment of $3,065.40 made in May. The Debtor's original statement of account with First National Bank, Minot, attached to the Trustee's affidavit, reveals a single payment of $3,065.40 having been made on May 28, 1980, but does not reflect any further checks in this amount until an October 15, 1980, payment of $3,065.40.

This factual discrepancy, in view of the statements of account, must be resolved in favor of the Plaintiff's recollection. No payments were made in the months of June, July, August or September.

In question is the October payment and a later one made on November 6, 1982, for $3,065.40.

The Plaintiff-Trustee by Complaint filed on September 16, 1982, is seeking the return of these two payments, taking the position that they are preferential transfers within the meaning of § 547(b) of the Bankruptcy Code. The Defendant takes the position

that these payments were intended by the Defendant as well as the Debtor to be contemporaneous exchanges for new value or alternatively, were made in payment of a debt incurred in the ordinary course of business within 45 days after the debt was incurred. As such, § 547(c)(1) and (2) would remove these two transactions from treatment as preferences.

It is the Defendant's contention that the October and November payments were intended as payments on their current monthly rent and for contemporaneous consideration, specifically for continuation of the Debtor's leasehold estate.

Subsection (b) of § 547 authorizes the trustee to avoid a transfer if the five elements of a preference are present. In the instant case it appears to the Court that these elements all exist. The issue thus becomes whether the October and November rent payments were within the excluding provisions of § 547(c)(1) and (2). The Trustee believes these two payments to have been made against the arrearages of the months prior to the months of actual payment. The facts do not support this position. We do not have a situation where the Debtor attempted to pay off an accumulated rental obligation by a single lump-sum payment shortly before the bankruptcy filing. Certainly such a lump-sum payment would be considered as a preference and the exceptions of § 547(c)(1) and (2) would not apply. Both of the October and November payments were for exactly the amount of a single monthly payment as called for in the lease.

Under § 365 of the Code, an unexpired lease on real property is treated as an executory contract which involves an exchange of rights and obligations throughout the term of the lease. As each month comes up, the lessee becomes obligated anew for that month's rent and in return, the lessor becomes obligated to provide the lessee with the leasehold for that month. Pre-code decisions have generally held that the payment of current rent is premised upon current consideration and did not constitute a preference. *In re Barrott,* 6 Am.Bank.

Rep. 199 (S.D.N.Y.1901); *Matter of Louis J. Beigdoll Motor Co.,* 35 Am.Bank.Rep. 32, 225 F. 87 (E.D.Pa.1915) and *In re Bowles,* 14 Am.Bank.Rep. (N.S.) 133 (E.D.Neb.1928). Later decisions under the code have followed this view. Most often cited is the case of *In re Mindy's, Inc.,* 17 B.R. 177 (Bkrtcy.S.D.Ohio 1982) where the court, in reviewing a number of rental payments made anywhere from five to eighteen days after the first of each month, found that each of the payments were substantially contemporaneous to the time the obligation arose. Since the obligation for rent was incurred on the first of *each* month, each payment would be considered a payment for an additional month of occupancy. See also *In re Thomas W. Garland, Inc.,* 28 B.R. 87 (Bkrtcy.E.D.Mo.1983). Following *Mindy's* in our own 8th Circuit where in *In re Iowa Premium Service Co., Inc.,* 695 F.2d 1109 (8th Cir.1982) the court made an en banc review of a bankruptcy court order concerning the issue of whether interest payments made within 90 days of the bankruptcy filing were preferential transfers. In that case, the debtor made regular payments of interest pursuant to the terms of a promissory note. In question were three payments made in May, June and July for interest which had accrued in each of these months. It was the bank's position that the debt for interest was incurred only as each day's interest accrued. The appellate court analogized the situation before it to that of a tenant who, said the court, "pays for the continued use of the property". Hence, the debt was not incurred until the debtor actually used the money, and that occurred on a daily basis. In so holding, the appellate court chose to follow a line of cases which hold that under § 547(c)(2) a debt is incurred on the date the debtor first becomes obligated. *Barash v. Public Finance Corp.,* 658 F.2d 504 (7th Cir.1981); *In re Ken Gardner Ford Sales, Inc.,* 10 B.R. 632 (Bkrtcy.E.D.Tenn.1981); *In re McCormick,* 5 B.R. 726 (Bkrtcy.N.D.Ohio 1980).

From the foregoing analysis, it seems clear that the Debtor, Clothes, Inc., did not incur a debt for rent until the first

day of each month during the term of the lease. Both the October payment and the November payment were for the exact amount of the rental obligation for those months, respectively, and both were made within 45 days of the date the respective obligations were incurred. It appears from past business practice (the May 28 payment), that payments of current months' rent were accepted some time beyond the due date. Accordingly, it is the opinion of the Court that the October payment was intended as a payment of the rent obligation for that month and did meet the requirements of both § 547(c)(1) and (2). The payment made on November 6 also meets these requirements to the extent that the leasehold was extended during that month. It appears, however, from the Defendant's response to interrogatories that the term of the lease ran only through November 15, 1980, so that the November payment of $3,065.40 could not pertain totally to the month of November. Logically, if we are to follow the rationale that has developed thus far, only one-half of this sum could be considered as a contemporaneous exchange for new value. Certainly neither the Debtor nor the Defendant-lessee intended to pay a full month's rent for only fifteen days of remaining leasehold. Accordingly, the sum of $1,532.70 would have to have been applied against arrearages from preceding months and, assuming that was the case, would be a preference subject to the Trustee's avoiding power.

Based upon the foregoing, the Court determines the sum of $1,532.70 was a preference under the provisions of § 547(b) and judgment in this amount will be entered in favor of the Plaintiff in accordance herewith.