In re ARCTIC AIR CONDITIONING, INC., Debtor.

Robert B. CARTER, Trustee, Plaintiff,

v.

Peg PICKENS, Defendant.

Bankruptcy No. 3–82–01737.
Adv. No. 3–83–0681.

United States Bankruptcy Court,
E.D. Tennessee.

Dec. 14, 1983.

Carter & Carter, Robert B. Carter, Johnson City, Tenn., pro se.

Johnson & Davis, Dick L. Johnson, Kim A. Brown, Johnson City, Tenn., for defendant.

## MEMORANDUM

CLIVE W. BARE, Bankruptcy Judge.

In this adversary proceeding, the plaintiff trustee seeks to recover a preference from the defendant, 11 U.S.C.A. § 547(b) (1979), in the sum of $10,745.14. The facts are not in dispute and are fully set forth in defendant's brief.

Defendant, Peg Pickens, is the widow of the president and majority shareholder of the debtor corporation, Arctic Air Conditioning, Inc.

In August 1982, the debtor was confronted by the Internal Revenue Service of the United States, concerning payment of taxes owed by the debtor corporation. The IRS threatened to attach the assets of the corporation unless the taxes were paid promptly.

The debtor corporation was suffering from cash flow difficulties, and did not have the necessary funds to pay the taxes. In order to allow payment, the defendant's husband approached defendant and inquired if defendant would be willing to loan the corporation funds to be used to satisfy the taxes owed in exchange for which the defendant would be guaranteed repayment from the proceeds of certain contracts of the corporation which were near completion. It was emphasized to defendant that without this loan the corporation could not remain in business, and no jobs would be completed.

On or about August 23, 1982, the defendant advanced to debtor corporation the sum of $10,245.14 to be used to satisfy the corporation's tax obligations, and to allow the corporation to remain in business. The corporation in turn agreed to repay the defendant from funds to be paid on completion of certain work in process which the debtor was currently engaged in. The funds advanced by defendant were used by the debtor to pay the corporate obligations to the IRS and the corporation continued in business and completed several jobs, including those from which the proceeds were to be used to repay the defendant.

On September 2, 1982, the corporation paid $500 interest on the funds borrowed. The specific jobs were completed in September, 1982, at which time the funds promised to defendant were distributed by the corporation to defendant by two checks dated September 22, 1982, in the amount of $5,122.57 each.

The debtor corporation continued in business until November 12, 1982, at which time ... [it] filed for relief under Chapter 7 of the Bankruptcy Code.

Defendant's Trial Brief at 1–2.

Defendant contends that the "transfer" which the trustee is attempting to set aside as a preference occurred on August 23, 1982, when the corporation in effect "assigned" to her the funds to be realized from the future completion of jobs. Defendant further contends that the transfer does not meet the test for a voidable preference under § 547(b) of the Bankruptcy Code. Alternatively she maintains that even if the trustee can prove all five elements of § 547(b) the transfer is nonetheless excepted from attack as a voidable preference by virtue of § 547(c)(1) and (2).

## II

In order to avoid a preference under § 547(b) the trustee must establish a transfer of property of the debtor—

    (1) to or for the benefit of a creditor;

    (2) for or on account of an antecedent debt;

    (3) made while the debtor was insolvent;[1]

---

1. For the purposes of § 547 the debtor is presumed to have been insolvent on and during

(4) made on or within 90 days before the date of the filing of the petition;

(5) that enables the creditor to receive a greater portion of his claim than he would receive under the distributive provisions of Chapter 7 of the Bankruptcy Code.

■ The undisputed facts establish the elements necessary to avoid the transfer. On August 23, 1982, the defendant loaned the corporation $10,245.14. This sum was repaid with interest on September 2 and September 22, 1982. The payments on those dates constituted a transfer of property of the debtor to a creditor in payment of an antecedent debt. The transfers, both occurring within the ninety day period preceding bankruptcy, diminished the debtor's assets otherwise available to all creditors. Finally, there is no evidence rebutting the presumption of insolvency.

■ Defendant asserts that she is "in effect a lien creditor of the debtor corporation." It does not appear from the record that a security agreement covering the "assigned" contract rights was ever executed.[2] A security interest within the scope of Tenn.Code Ann. § 47–9–102 (1979) is not enforceable unless the collateral is in the possession of the secured party or the debtor has signed a security agreement containing a description of the collateral. Tenn. Code Ann. § 47–9–203(1) (1979). Clearly, since defendant could not have physically possessed the contract rights, a written agreement was necessary to create a security interest in the debtor's contract rights.[3]

■ Defendant also asserts she is protected by the exception of § 547(c)(1) which states that the trustee may not avoid a transfer under § 547(b) to the extent that such transfer was:

"(A) intended by the debtor and the creditor . . . to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange."

The undisputed facts do not sustain defendant's position. "Contemporaneous" is defined as "existing, occurring, or originating during the same time." *Webster's Seventh New Collegiate Dictionary* (1967). The transaction in this case clearly did not involve a substantially contemporaneous exchange. Defendant loaned the money in August; she was repaid some thirty days later. See *National City Bank v. Hotchkiss,* 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115 (1913) (bank obtained preference when it received securities within hours of extending clearance loan to brokers).

■ Defendant also asserts an exception under § 547(c)(2) which protects transfers to the extent that such transfer was:

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee;

---

the 90 days immediately preceding the date of the filing of the petition. 11 U.S.C.A. § 547(f) (1979).

**2.** The parties refer to the transaction as involving "accounts." It appears, however, the transaction involved "contract rights," defined as "right[s] to payment under a contract not yet earned by performance . . . ." Tenn.Code Ann. § 47–9–106 (1979).

**3.** *Cleveland v. Martin,* 39 Tenn. (2 Head) 128 (1858) (debt may be assigned by parol for a valuable consideration) preceded the enactment of Tenn.Code Ann. §§ 47–9–101 to 507 (1979).

Furthermore, assuming a written security agreement exists, defendant took no steps to perfect her interest by filing a financing statement. Tenn.Code Ann. § 47–9–401(1) (1979). The "assignment" is not excepted from the filing requirement by Tenn.Code Ann. § 47–9–302(1)(e) (1979), which provides that it is not necessary to file to perfect an interest created by an assignment of contract rights which does not constitute a "significant part" of the debtor's outstanding contract rights. The debtor's schedules show only $15,460.70 in receivables on the date of bankruptcy.

(D) made according to ordinary business terms.

Again, the undisputed facts in this case do not bring the defendant within the exception. Neither the loan nor the repayment thereof was in the ordinary course of business of the debtor and the defendant.

The elements of 11 U.S.C.A. § 547(b) (1979) having been established and the court finding that the exceptions asserted by the transferee, 11 U.S.C.A. § 547(c)(1) and (2) (1979) are not applicable, the trustee is entitled to avoid the transfer. Judgment will be entered accordingly.

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.