**In re AIR CONDITIONING, INC. OF STUART, Debtor.**

**LEASING SERVICE CORPORATION, Appellant,**

v.

**Douglass E. WENDEL, as trustee for Air Conditioning, Inc. of Stuart, and American Bank of Martin County, Appellees.**

**Bankruptcy Nos. 86–8006–CIV–NES-BITT, 84–01395–BKC–TCB and 85–0965–BKC–TCB–A.**

United States District Court, S.D. Florida.

March 10, 1987.

Samuel S. Sorota, N. Miami Beach, Fla., for appellee American Bank.

John Gundlach, of Ackerman, Bakst, Gundlach, Lauer & Zwickle, P.A., West Palm Beach, Fla., for Trustee.

James E. Foster, of Foster & Kelly, Orlando, Fla., for appellant Leasing Service Corp.

Francis L. Carter, of Steel, Hector & Davis, Miami, Fla., Bruce E. Clark, of Sullivan & Cromwell, New York City, for amicus curiae New York Clearing House Ass'n.

## CORRECTED MEMORANDUM OPINION AND ORDER

NESBITT, District Judge.

## I. NATURE OF THE APPEAL

This is an appeal from a memorandum decision and judgment by the United States Bankruptcy Court entered in an adversary proceeding involving a pre-bankruptcy transaction by the debtor. The Bankruptcy Court nullified the debtor's promissory note, an assignment of its certificate of deposit and a Bank's letter of credit and ordered return of the certificate of deposit to the bankrupt's estate. Upon review of the decision and judgment of the Bankruptcy Court the Bankruptcy Court's "[f]indings of fact should not be set aside unless clearly erroneous." Bankruptcy Rule 8013, *In re All American of Ashburn, Inc.,* 805 F.2d 1515 (11th Cir.1986); *Matter of Hammons,* 614 F.2d 399 (5th Cir.1980). However, the conclusions of law made by the Bankruptcy Court are subject to *de novo* review by this Court. *In Re All American, supra; Hammons, supra.* For the reasons hereinafter given upon a *de novo* review, the Bankruptcy Court's conclusion of law by which it "nullified" a letter of credit is contrary to controlling principles of law and shall be reversed. In all other respects the opinion and judgment appealed from is affirmed.

## II. PROCEDURAL HISTORY

On or about April 24, 1984 Leasing Service Corporation (LSC) obtained a writ of replevin directed toward the recovery of computer equipment which was leased by it to Air Conditioning, Inc. of Stuart (ACI). LSC sought the writ as a result of ACI's failure to make payments on account of debt admittedly owing and past due under the lease of the computer equipment owned by LSC. A supplemental writ of replevin was issued on May 9, 1984 to recover all of ACI's "goods and assets" in which LSC had a security interest pursuant to the terms of the lease. Apparently to avoid being put out of business completely, ACI arranged for a $20,000 letter of credit to be issued on June 15, 1984 by AMERICAN BANK OF MARTIN COUNTY (AMERICAN BANK) for the account and benefit of LSC in return for LSC's promise not to enforce the second writ of replevin. As consideration for AMERICAN BANK's is-

suance of the letter of credit ACI executed an unsecured promissory note dated June 15, 1984 and payable to AMERICAN BANK, which was to be secured by a $20,-000 certificate of deposit owned by the debtor ACI.[1] The assignment and delivery of the certificate of deposit took place some six days later, on or about June 21, 1984.

On July 25, 1984, just over one month later, ACI filed a voluntary petition in bankruptcy under Chapter 11. Thereafter LSC sought and obtained relief from the automatic stay to liquidate the computer system previously replevied by it from ACI. The liquidation of the computer equipment was not sufficient to discharge the amount due and owing LSC. On November 8, 1984 the Chapter 11 case was converted to a Chapter 7 liquidation proceeding and Douglass E. Wendel was appointed as trustee (Trustee). On May 10, 1985 LSC obtained a state court judgment in the amount of $40,447 against ACI.

Thereafter, on or about May 23, 1985, LSC made a timely demand upon AMERICAN BANK to honor its letter of credit. Instead of honoring the draft, AMERICAN BANK filed an adversary proceeding against LSC in the Bankruptcy Court seeking *inter alia* a judgment determining the validity of any lien or interest by LSC in the letter of credit. The trustee filed an intervention complaint seeking the return of the certificate of deposit on the theory that its transfer constituted a voidable preference under 11 U.S.C. § 547(b). LSC took the position that there had been no transfer of property to or for the benefit of a creditor, an essential element of a preference under 11 U.S.C. § 547(b)(1). After some threshold issues being raised as to whether the Bankruptcy Court should dismiss or decline to exercise jurisdiction, the Bankruptcy.Judge conducted two hearings and after considering stipulated facts and memorandums of law entered the decision and judgment appealed from.

The creditor LSC urges several procedural and substantive grounds for reversal or for remand with instructions to enter judg-

ment for LSC and against the AMERICAN BANK in accordance with the terms of the letter of credit. LSC claims error by the Bankruptcy Judge's "enjoining" the drafting of the letter of credit and cites a legion of legal authority for the proposition that it is "improper" for a Bankruptcy Court to enjoin the drafting upon a letter of credit on the theory that preference has occurred or may occur by reason of the honoring of the letter of credit. *In re Clothes, Inc.*, 35 B.R. 489 (Bankr.D.N.D.1983), *In re Price Chopper Supermarkets Inc.*, 40 B.R. 816 (Bankr.S.D.Calif.1984). However, the Bankruptcy Court did not "enjoin" the letter of credit, but agreed with AMERICAN BANK's position that the letter of credit should be canceled and the bank released from its obligations thereunder. The net effect, however, was to nullify the letter of credit which could threaten the disruption of commerce and banking as they are dependent upon the traditional integrity of the letter of credit.

The trustee, having prevailed, urges affirmance of the Bankruptcy Court ruling as being "well within the jurisdiction of the Bankruptcy Court" to set aside a preferential transfer under § 547 of the Bankruptcy Code.

The New York Clearing House Association (the "Clearing House") has filed an *amicus curiae* brief before this Court. The Clearing House urges that the Bankruptcy Court decision nullifying the letter of credit is contrary to well established legal precedent and "threatens to create uncertainty and confusion which would undermine the function of letters of credit generally as an essential element of commerce."

### III.   LEGAL DISCUSSION

The primary issue which governs disposition of this appeal is whether under the stipulated facts of this case the Bankruptcy Court exceeded its authority when it nullified the letter of credit. This, in turn, depends on whether the letter of credit transaction was a transfer of property of

---

**1.**   The promissory note provided that the $20,000 certificate of deposit was to be deposited with

the bank no later than fifteen (15) days from the date of the note.

the debtor (ACI) for the benefit of the creditor (LSC) so as to be considered a preferential transfer under 11 U.S.C. § 547(b).

In order to put this case in perspective an important fact should be kept in mind. The debt owed by ACI to LSC existed prior to the issuance of the letter of credit. In other words, there is no question that the debt owed by ACI was an "antecedent" debt. Thus, if ACI had given LSC an additional security interest of any kind to secure repayment of the debt, rather than providing for the issuance of the letter of credit, the transfer clearly would have been subject to being avoided as a preference by the trustee under 11 U.S.C. § 547(b).[2] The question that then arises is whether a debtor should be able, through the recognized sanctity of a letter of credit, to secure payment of an antecedent debt when he could not do so through any other type of security interest.

One can understand how in the interest of efficiency, and looking to substance rather than form, the Bankruptcy Court found that the letter of credit was a part of a "single contemporaneous transaction" (i.e., the promissory note, the letter of credit and the assignment of collateral) which transferred property of the bankrupt debtor. Additionally, the transfer of the certificate of deposit depleted the estate of the bankrupt debtor ACI and conferred a benefit on the creditor LSC to the detriment of other creditors which is the essence of a preferential transfer.

■ However, there is an equally compelling factor to be considered in that a letter of credit is traditionally an instrument of commerce that travels with no baggage except that which is acquired by its terms. The independence of the letter of credit is well established. It is a fundamental principle of commercial transactions that a letter of credit is an undertaking solely of the issuing bank to the beneficiary; it is independent of the obligations of the issuing bank and the account party. *See* Fla.Stat.

§ 675.109. *Pringle-Associated Mortgage Corp. v. Southern National Bank,* 571 F.2d 871 (5th Cir.1978); *Pro-Fab, Inc. v. Vipa Inc.,* 772 F.2d 847 (11th Cir.1985). Thus, under the facts of this case, an apparent conflict exists between the preference provisions of the Bankruptcy Code and established principles governing the uniqueness of a letter of credit.

Putting aside the propriety of the Bankruptcy Court "nullifying a letter of credit" as a remedy, it is necessary first to determine whether the composite transaction completed between ACI and the AMERICAN BANK during the six day period between June 15, and June 21, 1984 constituted a "preference." The creditor LSC conceded three of the five elements of a preference as specified in 11 U.S.C. § 547, contesting only elements (1) and (5). The pertinent parts of § 547(b) are as follows:

"... the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor ... (and)

(5) that enables such creditor to receive more than such creditor would receive (in Chapter 7 liquidation proceedings)."

Once a preference is established under § 547(b) the trustee may recover, if the Court so orders, the "value of such property, from ... the initial transferee of such transfer or the entity for whose benefit such transfer was made ..." § 550(a)(1).

a. *Transfer of Property of the Debtor to or for Benefit of a Creditor*

■ LSC takes the position that there was no transfer of property by ACI for the benefit of LSC because the only transfer of the debtor's property occurred six days after the issuance of the letter of credit when ACI delivered the $20,000 certificate of deposit to AMERICAN BANK. It follows therefore, according to LSC, that at the time the letter of credit was issued for the benefit of LSC, there was no transfer of the debtor's property for LSC's benefit,

---

**2.** 11 U.S.C. § 547(b) provides that "the trustee may avoid any transfer of an interest of the debtor in property ... (2) for or on account of

an antecedent debt owed by the debtor before such transfer was made."

and that since LSC was not a party to the transaction between AMERICAN BANK and ACI, it did not receive a preference by receiving the letter of credit. LSC further reasons that at the time the certificate of deposit was pledged it was for the benefit of the Bank and became the Bank's collateral, not LSC's, and therefore the issuance of the letter of credit was not a transfer of property of the debtor's estate for the benefit of a creditor. LSC concludes that if anyone, it was AMERICAN BANK that received a preferential transfer because it transformed an unsecured obligation of ACI into a secured obligation within ninety (90) days of the filing of the chapter 11 petition, and as it did not receive the certificate of deposit until six days after the letter of credit was issued.

LSC's analysis seems reasonable at first blush, particularly as there is no evidence of any urging by LSC for ACI to obtain the letter of credit to the disadvantage of other creditors, and for the further reason that LSC "gave up" pursuing its second writ of replevin in exchange for the letter of credit. However, LSC's analysis is lacking in some important respects.

First, although the transfer of the certificate of deposit (the debtor's property) was made to AMERICAN BANK it was clearly "for the benefit" of LSC because it indirectly secured payment of an undersecured antecedent debt owed by ACI. Secondly, it is not disputed that the promised transfer of the certificate of deposit to AMERICAN BANK induced the Bank to issue the letter of credit in favor of LSC. Consequently, by the so-called "contemporaneous transaction" there was a transfer of property of the debtor (ACI) for the benefit of the creditor (LSC).

b. *Creditor LSC Would Receive More Than in Chapter 7 Liquidation Proceeding.*

■ The next element the trustee must prove is that LSC would have received more from the letter of credit transaction than they would have received if the letter of credit transaction had not been made and LSC received distribution under a Chapter 7 proceeding. § 547(b)(5). The creditor asserts that there was no evidence before the Bankruptcy Court as to the value of the debtor's estate and therefore no such determination could have been properly made.

Upon a review of the transcript of October 24, 1985 it appears the Bankruptcy Court conducted a hearing and elicited a narrowing of the issues and stipulations by the parties and reflects that it was agreed without objection that the Bankruptcy schedules would be reviewed and relied on by the Bankruptcy Court to determine whether LSC was an undersecured creditor. The Bankruptcy Court in its opinion concluded the Bankrupt's total debts exceeded the total assets by approximately $50,000.[3] Thus, the Bankruptcy Court's finding that the letter of credit would have enabled LSC to recover more than they would under a Chapter 7 liquidation is supported by the record.

■ In summary, the Bankruptcy Court was correct in finding all the elements of a preferential transfer to LSC. There was clearly a transfer of property of the debtor for the benefit of a creditor when ACI obtained the letter of credit secured by the certificate of deposit which was timely delivered to AMERICAN BANK. Further, there is no question that the transfer of the certificate of deposit depleted the estate of the debtor. Since LSC was a vastly undersecured creditor prior to the date the _____ letter of credit secured by the certificate of deposit was issued, the letter of credit enabled it to receive more than it would have in a Chapter 7 proceeding at the expense of other creditors. Also, as conceded by LSC, the transfer of the certificate of deposit on June 21, 1984 was only one month before the bankruptcy petition was filed on July 25, 1984, well within the ninety day provision of § 547(b)(4). Additionally, the debtor ACI was concededly

---

**3.** It apparently is undisputed that the debtor's tangible personal property was subsequently sold by the trustee for only $1,000.00. Consequently, in light of the fact that ACI was indebt-

ed to LSC in an amount exceeding $47,000.00, the Bankruptcy Court's finding that LSC was undersecured has been borne out by the facts and cannot be said to be clearly erroneous.

insolvent at the time of the transfer and, the transfer was made on account of antecedent debt.[4] Therefore, all the elements of a preference have been met.

Having properly found a preference the Bankruptcy Court then recited that the letter of credit was part of a "single contemporaneous transaction" and concluded that the appropriate remedy was to nullify the letter of credit issued by AMERICAN BANK. This is where the Bankruptcy Court erred.

■ Even though a letter or credit may be "contemporaneous" with other agreements between debtors and creditors, it still includes by its very nature and purpose an independent agreement between the customer and the Bank which is to be treated separately from the agreement existing between the customer and the beneficiary. *In re Clothes, supra.*

■ In fact, the usefulness of a letter of credit as a recognized instrument in commerce rests on the premise that timely payment under the letter of credit will be forthcoming so long as the beneficiary complies with the terms and conditions of the letter of credit, regardless of any dispute between the account party and beneficiary or issuing bank. *East Girard Savings Assn. v. Citizens Nat'l Bank & Trust Co. of Baytown,* 593 F.2d 598 (5th Cir. 1979). As was said in *Pringle-Assoc. Mortg. Corp. v. Southern Nat. Bank,* 571 F.2d 871, 874 (5th Cir.1978):

> The essence of a letter of credit is the promise by a bank, or other issuer, to pay money. The key to the uniqueness of a letter of credit and to its commercial vitality is that the promise by the issuer is independent of any underlying contracts.

The trustee, having established a preferential transfer to LSC, is not without a remedy even though the sanctity of the letter of credit is reaffirmed by this opinion. Section 550(a) provides that the trust-

ee may recover either the debtor's property that was transferred or the value of such property from "the entity for whose benefit the transfer was made." In this case the property transferred was the certificate of deposit and the entity for whose benefit the transfer was made was LSC.

Since the creditor LSC received the benefit of a letter of credit as a preferential transfer, the trustee should be able to recapture from LSC the payment made pursuant to the letter of credit to the extent of the value of the certificate of deposit transferred to AMERICAN BANK without nullifying the letter of credit or the certificate of deposit itself. While this procedure may appear to be revering form over substance, as LSC will still "be out" the $20,000 under the facts of this case, LSC was at least assured that they would receive payment under the letter of credit. It is only the preference risk which may not be eliminated under the facts and circumstances of this case. Thus, this procedure only places the burden of repayment of the monies paid pursuant to the letter of credit where it belongs, upon LSC who received the preferential transfer to the detriment of other creditors of ACI, not upon AMERICAN BANK who issued the letter of credit.

A discussion of the sanctity of the letter of credit, particularly in Florida, would not be complete without an acknowledgment of *Matter of Twist Cap, Inc.,* 1 B.R. 284 (Bankr.M.D.Fla.1979). Although not referred to or mentioned by the Bankruptcy Court, it is relied on by the trustee as authority for affirming the Judgment appealed from.

In *Twist Cap,* a Bank issued three letters of credit for the account of the debtor Twist Cap in favor of two of Twist Cap's creditors. The issuance of the letters of credit took place more than four months before Twist Cap filed a bankruptcy petition. The Bankruptcy Court issued a temporary restraining order prohibiting payment on the letters of credit in order to

---

**4.** LSC also asserts that the transaction fits within the contemporaneous exchange exception of § 547(c)(1) because it allegedly gave new value when it agreed not to enforce the writ of replevin. However, simple forbearance from repos-

sessing goods does not constitute new value. *Matter of Lario,* 36 B.R. 582 (Bankr.S.D.Ohio 1983); *Matter of Duffy,* 3 B.R. 263 (Bankr.S. D.N.Y.1980).

preserve the status quo pending a determination of the rights of the parties.

The beneficiaries of the letters of credit challenged the jurisdiction of the Bankruptcy Court to enjoin payment of the letter of credit as they were not properties of the debtor Twist Cap. The Bankruptcy Court rejected the beneficiary's argument and granted a preliminary injunction. The underlying basis for the Court's decision was the view that a letter of credit can constitute property of the bankrupt's estate and therefore is within the jurisdiction of the Bankruptcy Court.

The *Twist Cap* case did not invalidate or nullify the letter of credit as was done by the Bankruptcy Court in this case. Further, the *Twist Cap* decision has not been followed in subsequent decisions. *See, e.g., In re M.J. Sales & Distributing Co., Inc.,* 25 B.R. 608 (Bankr.S.D.N.Y.1982); *In re North Shore & Central Illinois Freight Co.,* 30 B.R. 377 (Bankr.N.D.Ill.1983); *Matter of St. Petersburg Hotel Associates, Ltd.,* 37 B.R. 380 (M.D.Fla.1984). Thus, *Twist Cap* is not determinative of this proceeding.

## IV. CONCLUSION

After due consideration the Court concludes that that portion of the Bankruptcy Court's Opinion and Judgment finding a preference in favor of LSC is affirmed, and that portion of the opinion which nullifies the letter of credit, promissory note and assignment of certificate of deposit is reversed and this matter is remanded for further proceedings not inconsistent with this opinion.